**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

<table>
<tr><td>

**UNITED STATES OF AMERICA**

**v.**

**EDWIN DIAZ, a/k/a "DEMENTE"**

</td><td>

**Criminal No. 15-10338-FDS**

</td></tr>
</table>

## SENTENCING MEMORANDUM OF THE UNITED STATES

Edwin Diaz a/k/a "Demente" faces sentencing for racketeering conspiracy in furtherance of the MS-13 criminal enterprise, including for his role in the brutal murder of 16-year-old Cristofer de la Cruz, who was stabbed, hacked, and shot to death on a public street in East Boston. Diaz was one of three MS-13 members who stabbed the victim so many times that the victim was left with 48 sharp force injuries, and they slashed the victim with such force that they damaged the blades of their large knives on the victim's skull. While Diaz and the others were stabbing the victim, a fourth MS-13 member fired multiple shots into the victim's body. Far from showing remorse, Diaz was caught on tape bragging about the murder and wishing that he had been able to do more, such as cut off the victim's head, but he was unable to do so because the gunshots drew attention.

The nature and circumstances of the defendant's crime are horrific, appalling, and irretrievably devastating. If not for Diaz's age at the time of the offense and his acceptance of responsibility before trial, the government would have sought an even higher sentence than that contemplated by the binding Plea Agreement. As it stands, the government asks the Court to impose a sentence of *420 months (35 years) in custody to be followed by 60 months (5 years) of supervised release*. Any lower sentence will be insufficient to comply with the goals of sentencing. Diaz will also be subject to deportation upon the completion of his sentence.

I.   **The Sentence Contemplated by the Plea Agreement is Appropriate Based on the Sentencing Factors Articulated in 18 U.S.C. § 3553(a).**

A.  **Nature and Circumstances of the Offense.**

MS-13 is one of the most violent and dangerous criminal organizations operating in the United States today. *See generally* PSR at ¶¶ 9-20. Diaz was a member of the Westers Locos Salvatrucha clique of MS-13. *Id.* at ¶ 21. Known by his street name of Demente, Diaz was one of the main members of the Westers clique in Massachusetts and a key part of the efforts to expand the local clique, with multiple witnesses stating that Diaz was involved in recruiting students at East Boston High School. *Id.* at ¶¶ 22-23.

Diaz did more than just try to further MS-13's mission with his words. In a case where the Court saw evidence of numerous racketeering acts committed by MS-13 members in Massachusetts—including six murders, approximately fifteen attempted murders, and multiple conspiracies to murder—Diaz was involved in perhaps the most horrific and heartless of those acts. On January 10, 2016, Diaz, along with three other co-conspirators, murdered 16-year-old Cristofer de la Cruz on a public street after the gang lured him to his death by pretending to be a girl. *See id.* at ¶¶ 25-31. Diaz, Jairo Perez, and Edwin Gonzalez were each armed with large knives that they called machetes, and each stabbed and hacked De la Cruz multiple times. *Id.* at ¶ 32. While they were doing that, Rigoberto Mejia ran up and fired multiple shots at the victim. *Id.* Diaz and the other MS-13 members then left the young boy bleeding to death on the sidewalk. *Id.*

The injuries inflicted by Diaz and the others were gruesome and unimaginably cruel. The autopsy revealed that the victim suffered 48 sharp force injuries, multiple gunshot wounds, and multiple blunt force injuries. *Id.* at ¶ 33. The victim's left hand had been nearly severed from his arm, and the evidence suggests that this occurred when the victim raised his

hand to shield his head from an impending blow, and the knife/machete cut through his hand instead of his skull. *Id.* at ¶ 34.

Despite the victim trying desperately to shield his head, Diaz and the others struck the victim on the head multiple times, and many of the 48 sharp force wounds he suffered were sharp force injuries to his head. *Id.* at ¶ 35. Both Diaz and Gonzalez were captured on tape admitting to striking the victim on the head. *Id.* at ¶¶ 35, 41. Diaz, Gonzalez, and Perez struck the victim's head with such force that the victim had pieces of the metal blade embedded in his skull. *Id.* at ¶ 35. All three of the large knives used in the attack were recovered and were found to have damaged blades and the victim's DNA on them. *Id.* Although it is unclear which defendant used which knife, all three of the knives present a ghastly picture:







As if the murder itself was not bad enough, Diaz was then captured on tape boasting about the murder using the most callous and heinous language. Diaz described how he had "zero mercy, zero, nothing" when he was murdering De la Cruz. PSR at ¶ 39. Diaz then described how he "wouldn't get off" when the victim was on the ground, and further described how he kept stabbing him the victim, using sound-effects to mimic how he went "swift, swift, swift" and "chig-chig" into the victim's body with his knife. *Id.* at ¶¶ 40-41. Diaz also described the murder as "dicing" the victim "like onions." *Id.* at ¶ 41. Diaz then talked about how it was his "mission" to cut off the victim's head and leave it lying on the street to send a message to others. *Id.* at ¶ 42. Finally, he discussed how the murder "was awesome" and how he wanted to kill again, stating, "I keep feeling that I want to kill another one." *Id.* at 43. Not content with a murder where the victim was stabbed four dozen times and shot multiple times, Diaz stated, "I want to go back and get that son of a bitch again, and do something worse." *Id.*

Even as murders go, the nature and circumstances of the murder committed by Diaz are horrific, troubling, and deserving of significant punishment.

### B. History and Characteristics of the Defendant

The history and characteristics of the defendant, as summarized in the PSR, also support the recommended sentence of 35 years. A lengthy involvement with a gang like MS-13 culminating in a brutal murder calls for severe punishment. The government comments briefly on two factors that support a sentence of 35 years as opposed to a higher sentence:

*First*, and significantly, Diaz committed the murder barely a month after he turned 18-years-old. Although Diaz was an adult at the time of the offense and certainly responsible for his actions, the government is mindful of the "distinctive attributes of youth," which include

an "underdeveloped sense of responsibility" that makes youths vulnerable to "negative influences and outside pressures" and makes it difficult for them to "extricate themselves from horrific, crime-producing settings." *Miller v. Alabama*, 567 U.S. 460 (2012).  Although courts have generally made these observations in cases involving the sentencings of juveniles, *see, e.g.*, *Miller* and *Roper v. Simmons*, 543 U.S. 551 (2005), it is helpful to keep those principles in mind when crafting a discretionary sentence on an 18-year-old who was a juvenile when his fellow gang member(s) started planning the murder.

*Second*, although the defendant's initial reaction to the murder was deplorable and anything but remorseful, the defendant, through counsel, expressed a relatively-early interest in pleading guilty.  Although this is not a mitigating factor, the government considered this a factor in agreeing to a binding sentencing recommendation of 420 months in prison.  Had this matter proceeded to trial, the government would have sought an even higher sentence.

### C. Need for Sentence to Afford Adequate Deterrence, Reflect Seriousness of the Offense, and Promote Respect for the Law.

Diaz participated in the brutal gangland murder of a 16-year-old boy on a public street. The recommended sentence of 420 months furthers the need to promote respect for the law, afford adequate deterrence, and reflect the seriousness of the offense.  Each of the 18 U.S.C. § 3553(a) factors argue strongly in support of the recommended sentence, and this sentence is appropriate and advisable regardless of what the defendant's guideline sentence might be.

### II.     The 420-Month Sentence is Appropriate Regardless of Guideline Range.

Although this case involves a binding plea under Rule 11(c)(1)(C), the Court will need to begin with a calculation of the Guideline Sentencing Range, and there is a slight disagreement between the government and the Probation Office on that point.  As stated in Government's Objection #1 to the PSR, the government believes that the defendant deserves

a two-level enhancement under USSG § 3A1.1(b)(1) for an offense involving a vulnerable victim. Given the binding plea agreement, the practical import of this disagreement is that if this enhancement is applied, the 420-month sentence will be a sentence within the Guideline Sentencing Range, and if this enhancement is not applied, the 420-month sentence will be above the Guideline Sentencing Range. The government does not believe the Court needs to rule on this objection if the Court is otherwise inclined to adopt the sentencing recommendation of the parties and is willing to impose an upward variance to achieve the desired result.

As for the merits of the argument, the government believes that Diaz should receive a vulnerable victim enhancement based on the facts and circumstances of this case. The victim was only 16-years-old when he was lured and murdered by Diaz and others. Importantly, unlike some of the other murders in this case, where MS-13 members came upon a gang rival on the street, MS-13 members specifically targeted De la Cruz through a catfishing scheme, preyed on his adolescence, and lured him to his death by pretending to be a girl that was meeting the teenager for a date.

Probation has declined to apply the enhancement because it does not believe that the victim was unusually vulnerable and/or believes that there is no evidence indicating that Diaz targeted the victim based on the vulnerability. However, cases interpreting this provision have held that "the defendant need not have targeted the victim on account of the victim's vulnerability" and "there need not be a nexus between the victim's vulnerability and the crime" for the enhancement to apply. *See* Haines et al., *Federal Sentencing Guidelines Handbook*, § 3A1.1, Author's Discussion (2017 ed.) (collecting cases). First Circuit guidance on this point similarly states that targeting is not required because "such an additional requirement

of targeting … is at odds with the evident purpose of the guideline: to punish more severely conduct that is morally more culpable and to protect such victims by adding more deterrence." *United States v. Gill*, 99 F.3d 484, 488 (1st Cir. 1996).  "Further, to require subjective motivation undermines the guideline's own lesser scienter requirement, namely, that the defendant 'knew or should have known' of the victim's unusual vulnerability."  *Id.* Accordingly, to the extent the Court is inclined to rule on this issue, it should apply the enhancement because there is no requirement that Diaz targeted De la Cruz based on an unusual vulnerability.  It is sufficient that the defendant knew or should have known of the victim's vulnerability.

### III.   Conclusion

The murder of a 16-year-old boy to further the mission of a violent gang deserves a significant period of incarceration.   For the reasons above, the Court should sentence the defendant to *420 months (35 years) in custody followed by 60 months (5 years) of supervised release*.

Respectfully submitted,

ANDREW E. LELLING
United States Attorney

By:   /s/ Kunal Pasricha
Kunal Pasricha
Glenn A. MacKinlay
Assistant United States Attorneys

7

## CERTIFICATE OF SERVICE

I, the undersigned, certify that the foregoing document was filed through the Electronic Court Filing (ECF) system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing.

/s/ Kunal Pasricha
KUNAL PASRICHA
Assistant United States Attorney